37  413
32ap601

# THE BROOKLYN CROSSTOWN RAILROAD COMPANY, APPELLANT, *v.* THE CITY OF BROOKLYN, RESPONDENT.

*Common council of Brooklyn — power of, to pass ordinances — it cannot compel street cars to have a conductor as well as a driver.*

The common council of the city of Brooklyn passed an ordinance providing that from and after a time therein fixed all horse railroad companies should provide for every street car run in the city of Brooklyn a conductor as well as a driver, and that no car should be run without a conductor as well as a driver. A penalty of fifty dollars was imposed for each violation of the ordinance.

*Held,* that neither the act under which the plaintiff was incorporated — which provided that in the construction, maintenance and operation of the said road the company should be subject to any and all laws or ordinances that have been or may be established and in force by the common council of the city for the regulation of horse railroads generally — nor the power "to regulate and license common carriers, carriers of passengers," etc., conferred upon the common council by the charter of the city, authorized it to pass such an ordinance, and that the same was void. (DYKMAN, J., dissenting.)

Upon the trial of an action, brought to test the validity of the ordinance, the court excluded all testimony bearing upon the reasonableness of the ordinance.

*Held,* that this was error.

APPEAL from a judgment in favor of the defendant, entered upon the trial of this action by the court without a jury.

This action was brought to test the validity of the follow-ing ordinance, passed by the common council of the city of Brooklyn :

"SECTION 15. The said railroad companies shall provide for every street car run in the city of Brooklyn on and after May 1, 1883, a conductor as well as driver, and no car shall be run without a conductor as well as a driver.

"SEC. 16. The said companies shall be liable to a penalty of fifty dollars for any violation on their part of any provision of this article ; and any conductor, driver or other person violating any provision of this article shall be liable to a penalty of ten dollars, and it shall be the duty of the police to enforce the provisions of this article.

"SEC. 17. It shall be the duty of the police to daily report all violation of laws or ordinances and regulations appertaining to

railroads or other public conveyances, to the attorney of the corporation."

The power of the common council to pass the ordinance was claimed to exist under the act consolidating the companies which created the plaintiff (chapter 576 of 1868), which act "provided, further, that in the construction, maintenance and operation of said road, said new company shall be subject to any and all laws or ordinances that have been or may be established and in force by the common council of the city of Brooklyn for the regulation of horse railroads generally." It was also claimed to be given by chapter 564 of 1880, amending section 13, title 2, chapter 863 of 1873, so as to authorize the common council to "regulate and license common carriers, carriers of passengers, etc." * * * "The common council shall also fix an annual license fee, not exceeding the sum of twenty dollars, for each street or horse car daily operated or used in said city. * * * Said license fees shall be taken in full satisfaction for the use of the streets or avenues, but the same shall not relieve said companies from any obligation now required by law to keep such streets and avenues, or any part thereof, in repair."

*William C. De Witt*, for the appellant.

*John A. Taylor*, for the respondent.

BARNARD, P. J.:

The parties derive their existence from the same source. Both are created by legislative act. They are entirely independent, except when by positive law one has dominion over the other. In the first place the plaintiff, by the act of consolidation of the companies which constitute the line on which the plaintiff operates its cars, is made subject to the city. This is not a general subjection, but only that the "construction, maintenance and operation of said road" shall be subject to all laws of the city "for the regulation of horse railroads generally." I do not think this power sufficient to legalize an ordinance requiring a conductor on the plaintiff's cars as well as a driver.

The power assumed by the ordinance requires that the number of employees should be included in the term "operation" of the road.

While this may be doubted, it is clear that the city can only exer-cise a general power as to all roads. If the ordinance affects the plaintiff only, or if the city had no power over railroads generally, the ordinance cannot be based upon this section in the consolidation act. Had the city power to make such an ordinance as to railroads generally? By the charter of the city of Brooklyn, 1854, power to regulate the running of cars on certain railroads was given. The new charter passed in 1873 omits this power. The direct power in the present charter must therefore be upheld under the power to regulate common carriers and carriers of passengers. The plaintiff fills both characters. There is a strong foundation for the inference that the substitution of the words carriers and carriers of passengers was intended to cover street railroads. Such an inference is rendered questionable by the fact that the legislature left out words which had no doubt and substituted those which had. But if the case rested upon the law of the charter of 1873 it would seem to be plain that when the legislature had granted power to the plaintiff to run cars in the manner it should deem best, that the defendant, under the power of regulating common carriers of passengers, could not provide for the number of the employees on each car, or the number of horses it should use. The legislature has, however, gone a step farther. By chapter 564, Laws of 1880, while an amendment is made to the charter of 1873, and the general power to regulate and license common carriers is left untouched, it is provided that the common council shall fix an annual license fee for street railroad cars not exceeding twenty dollars each. By this act, taken in connection with the omission to re-enact the language in respect to railroads, it seems to have been the intention of the legislature to regulate the license for railroads of its own undele-gated power, whether a railroad shall have large or small cars, with or without a conductor, and how often the cars shall run, and when, are subjects left with the companies under their charters and subject to legislative control. No reason can be given why a conductor is necessary to public safety or to the security of the passengers. The lines of omnibuses in all large cities have been run always without a conductor. No complaint has been ever made, and no practical injury has been suffered which a conductor would have prevented. These are not, however, questions for

courts. The legislature can remedy evils, actual or anticipated, and can delegate the power to a municipality. It does not seem plain that it has done so, and in view of the injurious effect it is to have upon the plaintiff the ordinance should not be upheld.

. The judgment should, therefore, be reversed and a new trial granted, costs to abide event.

PRATT, J. :

This action was commenced to test the validity of an ordinance passed by the common council requiring every street car and railway company to provide a conductor as well as a driver " for every street car run in the city of Brooklyn after May 1, 1863," and fixing a penalty of fifty dollars against the offending company for every violation of the requirement. The trial judge held the ordinance valid as within the province of the common council, and dismissed the complaint. The plaintiff appeals from that judgment. The judge excluded all the testimony as to the reasonableness of the ordinance.

In my opinion the reasonableness of this ordinance was fairly raised by the pleadings and proceedings, and any testimony relevant to that question ought to have been admitted. The validity of every ordinance or by-law of a corporation which is not passed in strict compliance with statutory delegation of power depends upon its reasonableness.

The cases cited by the plaintiff's counsel abundantly establish this principle. To these may be added, as a further illustration of the principle, *Hurst* v. *Litchfield* (39 N. Y., 377), and hence that point was a proper subject for judicial examination as a question of fact.

Sometimes the nature of the case permits the determination of the reasonableness of an ordinance upon a mere inspection of the act itself, but in this case the proposition of the plaintiff's counsel was to show that the enforcement would be utterly destructive of the plaintiff's franchise. It is probable, from the nature of the case, that the reasonableness of this requirement depended upon a great variety of circumstances. Anything which would influence the common council in the exercise of its legislative power was a proper subject of judicial scrutiny. It is obvious that the general juris-

diction to enact ordinances regulating the use of streets does not authorize an arbitrary and unlimited exercise of power, otherwise it might require two men to operate a wheel-barrow or a hand cart. It was, therefore, the duty of the trial judge to look into all the circumstances which bore upon this question. The experience of persons engaged in the business of using one horse cars in other cities, the liability of danger from their use, the ease with which one man might manage them, differences of construction between these and two horse cars which are usually operated by two men, so far as it would illustrate the point at issue, any special circumstances in the grade of the road, the width of the streets along the line and a wide-spread variety of considerations suggested by the experience of practical railroad men.

I entertain no doubt that among these relevant considerations was the question of expense to the company, not that mere inconvenience or diminution of profits would be sufficient to determine the point, but that these matters, along with others, might throw some light upon the question at issue. This company has a right to operate its road and exercise its franchise without any unreasonable limitations, until the sovereign power interferes by making arbitrary requirements. Suppose it possible that it could be shown that this kind of car could be more easily operated by one man than a two-horse car could be managed by two and with the same or even greater assurances of safety to the passengers and the public, and with less obstruction and inconvenience upon the streets and greater convenience to the traveling public, would not this state of things help to test the reasonableness of this requirement? It is apparent from an inspection of the case as settled, that the trial judge proceeded upon the defendant's theory, and hence excluded and refused to consider this class of testimony.

For this reason the judgment should be reversed, and we also think that it was error to exclude testimony showing that this ordinance was discriminating, although upon its face it does not so appear. It could only apply to those railroad companies that were using what are called one-horse cars. There is a wide distinction between regulating the use of the public streets and entering into the management of the private business of those who have occasion to use them. The public have a right to the reasonable use of the

streets, and if the power to pass this ordinance can be maintained, I see no limit to the obstructions that may be placed on a business or why a footman and outriders should not be required for every private carriage sought to be driven through the streets.

This court has heretofore held that the general ordinance power of the common council, did not apply to a railroad company having a special grant from the legislature, so as in any way to restrict its rights and privileges. (*Brooklyn Cent. R. R. Co.* v. *Brooklyn City R. R. Co.*, 32 Barb., 358; *Brooklyn City R. R. Co.* v. *Furey*, 4 Abb. Pr. [N. S.], 364). The legislature in 1873 struck out from that part of the city charter relative to ordinances the power to pass ordinances to license and regulate all railroad cars running on any railroad established since January 1, 1853. (See tit. 2 of charter of 1854, and the charter of 1873, subd. 4, p. 23, laws and ordinances of Brooklyn.) By chapter 564 of the Laws of 1880, it provides that a license fee for such car " shall be in full satisfaction of all use of streets and avenues of said city." In view of the fact that the statutes give to the trustees of horse railways the power to manage the affairs of railway companies " and to regulate the manner in which passengers shall be transported," it is quite clear that the indefinite power to " license and regulate common carriers," remaining in the city charter does not warrant the passage of an ordinance regulating the manner of the interior facilities of a car or necessitating the use of a large instead of a small car. The argument based on the assumption that there was a covenant in the appellant's charter binding it to abide by such ordinances as the common council might pass, irrespective of the charter, is without foundation. The appellant is only bound by the provisions in chapter 576 of the Laws of 1868, " to be subject to such regulations as the common council shall have or may prescribe as to railroads generally." The cognate provisions in the charters of antecedent companies have no connection with the appellant, and under well settled authorities these provisions are wholly abrogated and repealed by implication by the provisions in the consolidation act of 1868, under which the appellant was incorporated. (*Werner* v. *German Savings Bank*, 2 Daly, 406; *Bartlet* v. *King*, 12 Mass., 537; *In the Matter of P. P. & C. I. R. R. Co.*, 67 N. Y., 371; *Moore* v. *Mausert*, 49 id., 372. The court below

likewise held the provisions of the act of 1858 to be alone appli-
-cable. It is clear, therefore, that the application of the ordinance
in question to the appellant·depends wholly upon the power of the
·common council to pass such an ordinance with respect to railroads
generally, which must be found in the charter and not in any special
act. It needs no argument to show that the common council, under
the general power to license and regulate common carriers, cannot
pass an ordinance relative to the domestic management of the
affairs of a railway corporation the effect of which would be to
reduce such corporation to insolvency, and thus nullify its charter
after it has complied with every statutory regulation at great
expense and invested its capital in good faith upon a completed
franchise.

The judgment should be reversed, and new trial granted, costs to
abide event.

DYKMAN, J., dissented.

Judgment reversed, and new trial granted, costs to abide event.